UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONJA R.,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | Case No.  ED CV 19-1631-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On August 27, 2019, plaintiff Sonja R. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") improperly evaluated the opinion of plaintiff's

1

treating psychiatrist; and (2) whether the ALJ improperly considered plaintiff's testimony. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 6-18; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-10.

Having carefully studied the parties' briefs, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly evaluated the opinion of plaintiff's treating psychiatrist, Dr. Renu Shishodia, and properly discounted plaintiff's subjective testimony about her alleged need to keep her legs elevated. The court therefore affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 38 years old on the alleged disability onset date, is a high school graduate, attended technical college, and has a phlebotomy certificate. AR at 44, 79, 1345. Plaintiff has past relevant work as a surgical technician and laboratory assistant. AR at 71, 1356-57.

On November 17, 2012, plaintiff filed an application for a period of disability and DIB, alleging an onset date of October 26, 2012. AR at 79. Plaintiff claimed she suffered from deep vein thrombosis, bipolar disorder, cancer, and hypertension. *Id.* Plaintiff's application was initially denied on June 27, 2013. AR at 79-91.

Plaintiff requested a hearing, which the then-assigned ALJ, Kenneth Ball, held on March 4, 2016. AR at 36. The ALJ denied plaintiff's claims on March 23, 2016. AR at 15-29. Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review on May 27, 2016. AR at 2-8. Accordingly, the ALJ's decision became the final decision of the Commissioner.

Plaintiff sought review of the decision in this court. On July 16, 2018, the

undersigned reversed the Commissioner's decision and remanded the matter for further administrative proceedings.  AR at 1408-34.

The Commissioner assigned ALJ Josephine Arno to preside over the remanded matter.  AR at 1504-08.  Plaintiff had filed a duplicative claim for DIB and a subsequent claim for SSI on September 6, 2016.  AR at 1437.  The new assigned ALJ consolidated plaintiff's subsequent claims with the remanded claims.  AR at 1311.

The ALJ held the remanded hearing on May 31, 2018.  AR at 1340.  Plaintiff, represented by counsel, appeared and testified at the hearing.  AR at 1345-54.  The ALJ also heard testimony from David Reinhardt, a vocational expert.  AR at 1356-61.  The ALJ denied plaintiff's claims for benefits on June 24, 2019.  AR at 1311-31.

Applying the well-established five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since October 26, 2012, the alleged onset date.  AR at 1314.

At step two, the ALJ found plaintiff suffered from several severe impairments: deep vein thrombosis of the right lower extremity and chronic venous insufficiency; pulmonary embolism; post thrombotic syndrome; right lower extremity ulcer; obesity; dermatofibrosarcoma protuberans of the left wrist, status post surgical excision in October 2011 and radiation finishing in February 2012; left wrist and hand osteoarthritis and tendinosis; left shoulder osteoarthritis and tendinosis; generalized anxiety disorder; and bipolar disorder.  *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR at 1316.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that plaintiff had the RFC to perform light work with the limitations that she could: stand for two hours total in an eight-hour workday; walk for two hours total in an eight-hour workday; sit for six-hours total in an eight-hour workday; frequently reach in all directions, handle, finger, feel, push, and pull with the bilateral upper extremities; occasionally operate foot controls with the right lower extremity; frequently operate foot controls with the left lower extremity; frequently climb ladders, ropes, or scaffolds; frequently climb ramps or stairs; frequently balance, stoop, kneel, crouch, or crawl; frequently walk on uneven terrain; and occasionally operate a motor vehicle on the job. AR at 1319. The ALJ further limited plaintiff to occasional exposure to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration. *Id.* The ALJ also determined plaintiff: is able to understand, remember, and carry out simple, routine work tasks but not at a production rate pace, for example, no assembly line work; may tolerate occasional workplace changes; may have frequent interaction with coworkers and supervisors; and may have occasional contact with the public. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work as a surgical technician or lab assistant. AR at 1329.

At step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including as an electronics worker,

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

shoe packer, or office helper. AR at 1329-30. The ALJ accordingly concluded plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 26, 2012 through the date of her decision. AR at 1331.

Plaintiff did not request review by the Appeals Council, so the ALJ's decision became the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation marks omitted). If the evidence can reasonably support either affirming or

reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (internal quotation marks omitted).

## IV.
## DISCUSSION

### A. The ALJ Properly Evaluated the Treating Physician's Opinion

Plaintiff argues the ALJ failed to properly consider the opinion of her treating psychiatrist, Dr. Renu Shishodia. P. Mem. at 7. Specifically, plaintiff contends the ALJ failed to provide legally sufficient reasons for giving Dr. Shishodia's opinion little weight. *Id.* Defendant counters the ALJ's decision was reasonable and that plaintiff does not actually argue Dr. Shishodia's opinion was consistent with the underlying record. D. Mem. at 3. Defendant also argues Dr. Shishodia's opinion was the only medical opinion that suggested severe limitations. *See id.*

To determine whether a claimant has a medically determinable impairment, the ALJ considers different types of evidence, including medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[2] The regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to

---

[2] The Social Security Administration issued new regulations effective March 27, 2017. All regulations cited in this decision are effective for cases filed prior to March 27, 2017.

cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of a treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Id.* If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, in rejecting the contradicted opinions of examining physicians. *Lester*, 81 F.3d at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006).

### 1. Dr. Shishodia's Findings and Opinion

Dr. Shishodia, a psychiatrist, treated plaintiff from at least early 2017 through early 2019. *See* AR at 1747-77. At a visit on April 18, 2017, plaintiff exhibited normal thoughts, perception, speech, and behavior and appeared in no distress, well-groomed, alert, and oriented to person, place, and time. AR at 1776. However, she also looked depressed, sad, and anxious. *Id.* Dr. Shishodia concluded plaintiff suffered from bipolar disorder and generalized anxiety disorder. *Id.* She referred plaintiff for psychotherapy. AR at 1777.

Dr. Shishodia treated plaintiff at least three more times in 2017. At each of those examinations, plaintiff appeared to have normal thoughts, perception, speech, and behavior. *See* AR at 1770, 1772, 1774. She continued to be well-groomed, alert, oriented, and in no apparent distress. *See id.* Although plaintiff appeared sad during each of those visits, she no longer appeared depressed or anxious. *See id.* During her August 25, 2017 visit, plaintiff also reported she slept all day for three

days, and still bites herself or pulls her hair when angry. *See* AR at 1772.

In 2018, Dr. Shishodia consistently reported plaintiff had normal thoughts, perception, speech, and behavior, and continued to appear well-groomed, alert, oriented, and in no apparent distress. *See* AR at 1762, 1764, 1766, 1768. At her February and May appointments, plaintiff appeared sad but not depressed or anxious. *See* AR at 1766, 1768. She did, however, report issues with her sleep and low moods with crying spells. *See id.* But her treatment notes indicate medication was helping with those symptoms. *See* AR at 1762, 1764, 1768. At her last two 2018 appointments on July and October, Dr. Shishodia observed plaintiff did not appear depressed, sad, or anxious. *See* AR at 1762, 1764.

On February 19, 2019, Dr. Shishodia completed a Mental Residual Functional Capacity Questionnaire and an Evaluation Form for Mental Disorders ("2019 opinion"). AR at 1747-48, 1750-53. During the examination, plaintiff appeared well-groomed, oriented, and in no apparent acute distress but with a sad, depressed, and anxious mood. *See* AR at 1750-51. Plaintiff reported excessive anxiety, restlessness, irritability, unstable moods, and unstable sleep, as well as episodes of biting herself and pulling her hair out when agitated. *See* AR at 1750. Plaintiff also reported passive death wishes, panic attacks, and feelings of worthlessness, hopelessness, and helplessness. *See* AR at 1751.

As a result of plaintiff's evaluation, Dr. Shishodia reiterated her previous diagnoses of bipolar disorder and generalized anxiety disorder. *See* AR at 1753. Using a check-the-box form, Dr. Shishodia opined plaintiff had moderate functional loss in her mental abilities needed to: understand, remember, and carry out simple and detailed tasks and instructions; maintain attention for a two-hour segment; and interact appropriately with the general public, co-workers, and supervisors. *See* AR at 1747. Dr. Shishodia further opined plaintiff had marked functional loss in her mental abilities needed to: maintain regular attendance and be

punctual within customary, usually strict tolerances; and complete a normal workday and workweek without interruptions from psychologically-based symptoms. *See id.* Based on these opinions, Dr. Shishodia gave plaintiff a poor prognosis, determined she was not competent to manage her own funds, and calculated she would miss more than four days of work per month due to her impairments or treatment. *See* AR at 1748, 1753.

On March 12, 2019, plaintiff presented for another examination with Dr. Shishodia. The results were once again unremarkable, and she did not appear depressed, sad, or anxious. *See* AR at 1760. Although plaintiff complained that her condition got worse, she also admitted she stopped taking at least one of her medications for two weeks. *See id.*

### 2. The ALJ's Findings

The parties agree that, because Dr. Shishodia's opinion was contradicted, the ALJ had to provide specific and legitimate reasons, supported by substantial evidence, for rejecting it. P. Mem. at 7, 13; D. Mem. at 2; *Smolen*, 80 F.3d at 1285. The ALJ gave little weight to Dr. Shishodia's opinion for five reasons.

#### a. Insufficient References to Medically Acceptable Objective Clinical or Diagnostic Findings

The ALJ first found Dr. Shishodia failed to provide sufficient references to medically acceptable objective clinical or diagnostic findings to support her opinion. AR at 1328. Plaintiff argues the ALJ failed to consider the objective clinical findings that Dr. Shishodia recorded in the evaluation form completed on the same day as the questionnaire. P. Mem. at 8. But basing an opinion on a single examination is hardly sufficient, especially when Dr. Shishodia had an extensive medical file for plaintiff going back at least two years. *See Steven A. v. Saul*, 2021 WL 275492, at *4 (C.D. Cal. Jan. 27, 2021) (doctor sufficiently referenced medically acceptable objective findings in opinion by relying on her own

observations during several sessions over two years); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). Thus, this reason for discounting Dr. Shishodia's opinion was specific, legitimate, and supported by substantial evidence.

### b. Lack of Objective Medical Evidence Support

The ALJ determined the objective medical evidence did not support Dr. Shishodia's 2019 opinion. AR at 1328. Although plaintiff argues the ALJ erred in discounting Dr. Shishodia's opinion for this reason (P. Mem. at 9-10), she points to little in the way of objective medical evidence in the record that might support the opinion that plaintiff was significantly mentally impaired.

The ALJ concluded that no objective medical evidence supported Dr. Shishodia's opinion that plaintiff has significant mental limitations including marked limitations in regular attendance, marked limitations in the ability to complete a normal workweek, missing more than four workdays per month, the inability to complete tasks satisfactorily, and poor adaptive functions. *See* AR at 1328, 1747. Plaintiff argues that the ALJ fails to explain how Dr. Shishodia's 2018 findings that plaintiff exhibited normal thought, speech, perception, and behavior undermine her opinion. P. Mem. at 9. It may be that a claimant could exhibit such normal behavior and function while still suffering the marked limitations found by Dr. Shishodia. But plaintiff does not point to anything in Dr. Shishodia's findings that would support such limitations, and there does not appear to be anything, as the ALJ found.

The only thing plaintiff points to is the ALJ's failure to mention that during plaintiff's November 17, 2017 examination, Dr. Shishodia noted her bipolar disorder was worsening. P. Mem. at 10. But the probative value of that remark is undermined by the fact that Dr. Shishodia included the same note on each of her

visit summaries from April 2017 to October 2018. *See* AR at 1762-77. She never elaborated on the remark and continued to report relatively stable findings at each of those visits. ALJs are not required to discuss every possible piece of evidence, especially if it is not probative. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Moreover, even if the ALJ erred in not considering that specific notation, viewing the record as a whole, her conclusion that the objective medical evidence did not support Dr. Shishodia's opinion was specific, legitimate, and supported by substantial evidence.

### c. **Inconsistency With Other Medical and Non-medical Sources**

The ALJ also determined evidence from other medical and non-medical sources was inconsistent with Dr. Shishodia's opinion. AR at 1328. As an example, the ALJ pointed to the unremarkable findings of a 2014 consultative psychiatric examination by Dr. Earbin Stanciell. *Id.* Dr. Stanciell noted plaintiff had normal speech, mood, affect, thought process, thought content, cognition, memory, concentration, and orientation. *See id.* (citing AR at 1194). In addition, Dr. Stanciell reported plaintiff had no difficulty interacting with others, did not complain of any psychotic symptoms, and had no problems maintaining concentration. *See id.* (citing AR at 1195). Based on these observations, Dr. Stanciell opined plaintiff would have: no limitations performing simple and repetitive tasks; mild limitations performing detailed and complex tasks; mild limitations performing work activities on a consistent basis without special or additional supervision; mild limitations completing a normal workday or work week; mild limitations accepting instructions and interacting with co-workers and the public; and mild limitations handling usual work stresses, changes, and demands. *See* AR at 1195. Plaintiff makes two main arguments against the ALJ's reliance on Dr. Stanciell's opinion.

First, plaintiff argues the consultative examination was no more than a cursory observation made during one physical examination. P. Mem. at 11. Thus, she contends it cannot be substantial evidence to contradict the opinion of Dr. Shishodia who knew and treated plaintiff for three years. *Id.* Dr. Stanciell's examination was not cursory as plaintiff argues. Dr. Stanciell performed a complete psychiatric evaluation during which she examined plaintiff and reviewed all of her medical and psychiatric history. *See* AR at 1192-96.

Second, plaintiff contends the ALJ's RFC is inconsistent with Dr. Stanciell's opinion, and thus the ALJ erred in relying on that opinion over Dr. Shishodia's. *See* P. Mem. at 10-11. Plaintiff ignores that the ALJ gave Dr. Stanciell's opinion partial weight. AR at 1327. Thus, it makes sense that the ALJ ultimately decided to formulate an RFC that was not entirely consistent with Dr. Stanciell's opinion. There is no rule that ALJs can only rely on opinions to which they give complete weight. To the contrary, ALJs must resolve conflicts between medical opinions, and ultimately formulate an RFC that is consistent with the evidence as a whole. *See Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999); AR at 1328 ("The undersigned has adopted those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole.").

To that end, Dr. Stanciell's contrary opinion may serve as substantial evidence because it is more consistent with independent clinical findings and other evidence than Dr. Shishodia's opinion. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Specifically, in a different section of the decision titled "Mental Medical Evidence Review," the ALJ outlined evidence more consistent with Dr. Stanciell's opinion than Dr. Shishodia's. *See* AR at 1237; *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts

and conflicting clinical evidence, stating his interpretation thereof, and making findings." (internal quotation marks omitted)). All of this medical evidence, ranging from 2012 to 2018, shows the ALJ did not simply isolate portions of the record to support her decision as plaintiff argues. To the contrary, the record is consistently clear that plaintiff's mental health evaluations were relatively stable – and thus more consistent with Dr. Stanciell's opinion – leading up to Dr. Shishodia's opinion that plaintiff was significantly mentally impaired. *See* AR at 1327 (citing AR at 927 (December 2012 examination), 1192-96 (March 2014 examination), 1282 (December 2015 examination), 1770-77 (2017 examinations), 1762-68 (2018 examinations)); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician . . . ." (citation omitted)).

As such, the ALJ's reasoning that Dr. Shishodia's opinion was inconsistent with other medical and non-medical evidence was specific, legitimate, and supported by substantial evidence.

### d. **Contradiction Between Opinion and Effect of Medication**

The ALJ further determined Dr. Shishodia's opinion was contradicted by evidence that medications improved plaintiff's anxiety and depression. AR at 1328. In support of this reason, the ALJ cited two medical notes from examinations performed by Dr. Patricia Bogema. *Id.* (citing AR at 1169, 1176). Plaintiff argues those notes show that medication improved only her anxiety but not her depression. P. Mem. at 11. She further contends any improvement does not necessarily mean her mental impairments no longer seriously affected her ability to function. *See id.* at 11-12. Finally, plaintiff argues those 2012 notes are not necessarily representative of the record as a whole, which shows she has periods of normal moods followed by depressive symptoms. *See id.* at 12.

The court agrees with plaintiff. The ALJ only cites to six medical reports indicating medication helped plaintiff's anxiety. *See* AR at 1322, 1328. All of this evidence comes from 2013 and 2014 examinations, making it outdated and less probative, given there is at least some evidence in the record that plaintiff's mental illness worsened in later years. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) ("Where a claimant's condition is progressively deteriorating, the most recent medical report is the most probative." (citation omitted)). In addition, the ALJ failed to consider whether, and if so to what extent, improved anxiety necessarily translated into improved function given that plaintiff also suffers from bipolar disorder and depression. For these reasons, the court finds the ALJ's determination on this issue was not a legitimate reason supported by substantial evidence to discount Dr. Shishodia's opinion.

### e. **Use of Check-the-Box Form**

Finally, the ALJ found Dr. Shishodia did not provide a supportable explanation for her opinion because she used a check-the-box form and failed to elaborate on her ratings. *See* AR at 1328. Plaintiff argues that such forms are no less reliable than other forms. *See* P. Mem. at 8-9. She also claims that, contrary to the ALJ's findings, Dr. Shishodia provided ample explanations on the form. *Id.*

There are conflicting decisions from the Ninth Circuit concerning the reliability of check-the-box forms. In some cases, the court has expressed a preference for individualized medical opinions over check-the-box forms, especially when the forms do not contain any explanation of the bases for the physician's conclusions. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). But recently, the court ruled that check-the-box forms are no "less reliable than any other type of form." *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017). Thus, ALJs may not reject the responses of treating physicians without specific and legitimate reasons

for doing so, "even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers." *Id.* (citing *Smolen*, 80 F.3d at 1288).

There is no need for the court to resolve this inconsistency in the Ninth Circuit precedent. Contrary to the ALJ's findings, Dr. Shishodia complemented her check-the-box opinion with several notes. *See* AR at 1747-48 (check-the-box form), 1750-53 (evaluation notes from same day). Thus, this was not a legitimate reason to discount the opinion here.

In sum, two of the ALJ's reasons for discounting Dr. Shishodia's opinion were invalid. But those errors are harmless because the ALJ also provided three specific and legitimate reasons, supported by substantial evidence, to discount the opinion, and those reasons were sufficient without the other two. Accordingly, the court finds the ALJ properly evaluated and discounted Dr. Shishodia's opinion.

**B.    The ALJ Properly Evaluated Plaintiff's Testimony**

Plaintiff argues the ALJ improperly evaluated her testimony by ignoring her statement that she needs to elevate her legs above her heart for 45 minutes to an hour to alleviate swelling. *See* P. Mem. at 17; AR at 1348. Plaintiff argues the ALJ had to address that statement and provide a specific, clear, and convincing reason, supported by substantial evidence, to reject it. *See id.* at 17-18.

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. SSR 16-3p rescinded and superseded SSR 96-7p and applies to decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

In adopting SSR 16-3p, the Social Security Administration sought to "clarify that subjective symptom evaluation is not an examination of an individual's

character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo*, 871 F.3d at 678 n.5 (internal quotation marks and alterations omitted).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.* In assessing intensity and persistence, the ALJ may consider: a claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen*, 80 F.3d at 1283-84 & n.8). If the ALJ rejects the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so.

*Id.* at 921, 929.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 1320. At the second step, the ALJ discounted plaintiff's symptom testimony about having to keep her legs elevated based on inconsistencies with the objective medical evidence and other evidence in the record, including plaintiff's previous statements. *See* AR at 1320-22. The ALJ also concluded that plaintiff's need to keep her legs elevated constituted merely conservative treatment. *See* AR at 1322. Because plaintiff cleared step one and there was no evidence of malingering, the ALJ's reasons for discounting plaintiff's symptom testimony had to be specific, clear, and convincing and supported by substantial evidence.

Plaintiff argues she testified she is required to elevate her legs above her heart every 45 minutes to an hour (P. Mem. at 15 (citing AR at 1348)); however, that was not precisely her testimony. Rather than testifying she has to elevate her legs *every* 45 minutes to an hour, at her second hearing in 2018, plaintiff testified that when she takes a break, she lies down with her "legs elevated up to 45 minutes to an hour for as long as [she] need[s] to, depending on the swelling." AR at 1348. At her first hearing in 2016, plaintiff testified she spends most of the day, approximately six hours, with her right leg elevated above her heart. AR at 54-55. Thus, her testimony overall is that she elevates her legs much of the day.

Plaintiff's argument focuses on plaintiff's testimony regarding her need to elevate her legs, and contends the ALJ fails to offer any reason to discount this testimony. P. Mem. at 17-18. But plaintiff ignores the ALJ's evaluation of her testimony regarding deep vein thrombosis and chronic venous insufficiency, which are the conditions that allegedly require plaintiff to keep her legs elevated in the first place. *See* AR at 54-55, 1319-22. More than once, the ALJ specifically acknowledged plaintiff's testimony that she elevates her legs. *See* AR at 1320,

1322. The ALJ also noted plaintiff's complaints of difficulty sitting and standing because of pain, swelling, leg ulcers, heaviness, and stiffness, all of which allegedly limit plaintiff's ability to stand and walk for extended periods. AR at 1320.

The ALJ ultimately determined plaintiff's testimony about these symptoms and limitations was inconsistent with the objective medical evidence and other evidence in the record. *See* AR at 1320-22; *Christine G.*, 402 F. Supp. 3d at 922 (in evaluating a claimant's symptom testimony, the ALJ may consider the consistency of the claimant's statements); SSR 16-3p, 2017 WL 5180304, at *8 (if a claimant's testimony is inconsistent with the objective medical evidence and other evidence, the ALJ will determine that his or her symptoms are less likely to reduce his or her capacity to perform work-related activities). The ALJ pointed to treatment notes from 2013 and 2014 showing plaintiff had a steady gait, normal range of motion, and good strength. *See* AR at 1034 (Dec. 2013), 1054 (June 2013), 1173 (Feb. 2014). Treatment notes from May 2015 also show plaintiff denied pain or numbness in her extremities or any other issues with her muscoskeletal system. *See* AR at 1300. Further, the results from a 2019 consultative examination revealed plaintiff had no pain or swelling in her extremities while in motion. *See* AR at 1727. The consultative physician also noted plaintiff showed normal muscle bulk and good motor strength throughout her body. *See* AR at 1728. The ALJ specifically considered plaintiff's need to elevate her legs to treat her conditions and indicated she found such need to be merely conservative treatment. *See* AR at 1322 (citing AR at 1743); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." (internal quotation marks omitted)).

Considering the ALJ's careful analysis of plaintiff's testimony as to these

issues, the court concludes the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence in the record, to discount plaintiff's alleged need to keep her legs elevated.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 29, 2021

SHERI PYM
United States Magistrate Judge